George C. VOURNAS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 315–85L.

United States Claims Court.

Aug. 12, 1986.

Andrew R. Polott, Washington, D.C., for plaintiff. Martha McQuade and Schweitzer, Hirschmann & Farrar, P.C., Washington, D.C., of counsel.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

### OPINION

MAYER, Judge.

Plaintiff sues here under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4653, for reimbursement of taxes incurred when defendant took his property in a condemnation suit. Defendant denies liability because the tax does not fall within the terms of the Act and reimbursement would therefore require federal payment of taxes to a state without waiver of immunity. The case is submitted on cross-motions for summary judgment.

### Background

Plaintiff George Vournas owned approximately 200.67 acres of land along River Road in Montgomery County, Maryland, known as Callithea Farm. In October 1975, defendant filed a complaint in condemnation in United States District Court to acquire approximately 57.92 acres of Callithea Farm for part of the Chesapeake and Ohio Canal National Historic Park. Montgomery County entered an appearance to protect its interest in taxes due on the property as of the day of the taking, and requested that any taxes be paid out of the money awarded to plaintiff.

The court awarded plaintiff $591,300, of which $64,800 was for severance damages and $526,500 compensated for the value of the property. The award was subject to all existing liens, encumbrances and charges against the land at the time title vested.

In March of 1979, defendant deposited the amount awarded with the clerk of the district court in satisfaction of the judgment, at which time title to the property vested in the United States. The clerk paid the money over to a title company which paid and discharged the existing liens, taxes and encumbrances against the property, and remitted the remainder to plaintiff and other entitled parties.

In May of 1979, Montgomery County demanded that plaintiff pay the County farmland transfer tax pursuant to sections 52–17 through 52–27 of the Montgomery County Code. This tax is imposed on the transfer of farmland at a higher rate than the typical property transfer because farmland in Montgomery County is assessed at a lower rate to encourage retention of that

use. The higher rate on transfer partially compensates the county for revenue lost because of the lower property tax assessment. Plaintiff filed suit in a Maryland circuit court challenging the constitutionality of the tax and its applicability to him. The court ruled the tax was constitutional and found plaintiff liable for it as levied. The judgment was affirmed on appeal, *Vournas v. Montgomery County*, 53 Md. App. 243, 452 A.2d 1263 (1982), *aff'd on other grounds, Vournas v. Montgomery County*, 300 Md. 123, 476 A.2d 705, 709 (1984), and plaintiff paid the tax, interest, and court costs.

Plaintiff filed a claim with the Department of Interior for reimbursement of the tax, interest and court costs. He claimed the tax was a transfer tax within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4653, which provides that

> The head of a federal agency, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property ... shall reimburse the owner, to the extent the head of such agency deems fair and reasonable, for expenses he necessarily incurred for—
>
> (1) recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States....

The Department of Interior denied his claim saying the tax was not a transfer tax, but an excise tax not specifically covered and a property tax. Plaintiff seeks review of this ruling here.

### Discussion

The case turns on the definitions of transfer and excise taxes under state law. *See Fidelity Trust Co. v. Field*, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940). The Maryland courts have spent many pages defining excise taxes, which include all internal taxes that are not property taxes assessed by virtue of ownership alone. *Herman v. Mayor & City Council of Baltimore*, 189 Md. 191, 55 A.2d 491, 495 (1947). They are laid on the sale of a commodity, *id.;* imposed upon the enjoyment of a privilege, *Pittman v. Housing Authority of Baltimore*, 180 Md. 457, 25 A.2d 466, 469 (1942); and " 'imposed upon a particular use of property or the exercise of a single power incident to ownership,' " *Weaver v. Prince George's County*, 281 Md. 349, 379 A.2d 399, 404 (1977), *quoting Bromley v. McCaughn*, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226 (1929). *Vournas v. Montgomery County*, 53 Md.App. 243, 452 A.2d 1263, 1268 (1982), says, "The tax imposed upon the transfer of real property is an excise tax and not a property tax ... which is imposed on the privilege of recording a deed or other instrument."

A transfer tax is "in the nature of [an] excise tax[ ] imposed on the privilege of recording certain instruments that reflect ... the transfer of title to real property." 64 Op. Att'y. Gen. Md. 286 (Mar. 27, 1979). The tax is triggered by the recordation of the deed conveying legal title, *id.*, and is "imposed upon every written instrument conveying title to real property ... recorded among the land records in the state, and on the transfer of title to real property...." Md.Ann.Code art. 81, § 278A. *Cf. Pittman*, 25 A.2d at 469.

Montgomery County Code § 52–20(a), at issue here, requires a "tax to be paid and collected on the transfer ... of any fee simple interest in real property." Transfer is defined as "[t]he act of the parties, or of the law, by which title to property ... is conveyed from one person to another." *Id.* § 52–19. The tax is payable before the written instrument reflecting the transfer of title is recorded. From this it is apparent that the farmland transfer tax fits the definition of a transfer tax, and that a transfer tax is also an excise.

The Department of Interior's rejection of plaintiff's claim because it is based on payment of a non-compensable excise tax, and its inconsistent conclusion that the "taxes were taxes on the property and not on the

passing or succession of the property from one party to another," are incorrect. In the first place, the farmland transfer tax cannot be both an excise and a property tax. Maryland law is plain that it is a form of excise, a transfer tax which falls within the contemplation of section 4653. In the second place, merely because the amount of the tax is measured by the consideration received for the property when the taxable event, transfer, occurs, does not make this a tax on the property instead of on the act of passing title, especially in the face of an explicit statute to the contrary.

■ Defendant argues that plaintiff is collaterally estopped from arguing the tax is a transfer tax here because he urged in the Maryland courts that it was an excise. Collateral estoppel, or issue preclusion, bars relitigation of an issue when another court has faced the same issue in a case in which the party against whom estoppel is sought was represented, and decision on the issue was necessary to its judgment. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). The Maryland courts referred to the tax as both a transfer tax and an excise but further definition was not necessary because their decisions turned on the distinction between an excise tax and a property tax. *See* 476 A.2d at 709; 452 A.2d at 1268; No. 55018 slip op. at 5 (Montgomery Cty.Cir.Ct. Feb. 2, 1982). One prong of plaintiff's argument in Maryland was that the tax is an excise tax collected through refusal to record the instrument on which the tax is due or criminal prosecution, rather than a property tax that becomes a lien on the property. The courts agreed, but this does not preclude plaintiff's argument here that it was also a transfer tax.

The purpose of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 is to "establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal ... programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." 42 U.S.C. § 4621. It was passed to "assure that one who is displaced by a federal program does not suffer a loss if [the] loss can be reasonably compensated by a money payment." *Louisiana Dept. of Highways v. Coleman*, 444 F.Supp. 151, 154 (M.D.La. 1978). The provision was designed to promote public confidence in government acquisition procedures and consistent treatment of people who sell land to the government. 41 C.F.R. 114–50.301(c), (d).

■ It would be inconsistent with the statute to require plaintiff to bear this tax he incurred only because of the forced sale to the government through condemnation. But defendant argues that plaintiff would not have kept his property as farmland, because he later sold additional acreage to private parties for development. That plaintiff later voluntarily subjected himself to the farmland transfer tax, however, is irrelevant to defendant's obligation under section 4653. The issue is not whether plaintiff would have continued to hold his property as farmland, but whether he can recover for expenses associated with the forced sale of his property. The condemnation caused expense he did not seek but which as a party to a commercial transaction he could voluntarily anticipate and accommodate. The expense is readily compensable by a money award and public confidence in government acquisition is fostered when a seller's economic loss is redressed. This is what section 4653 is for.

*Douglas v. United States*, 217 Ct.Cl. 97, 576 F.2d 887, 891 (1978), held that defendant's reading of section 4653 was too narrow when it denied a claim for a mortgage prepayment penalty upon sale to the Postal Service. The court said that the "goal of uniformity would not be fostered by the government's overly technical reading of the act.... [O]wner's would be treated differently, with a resultant loss of uniformity, based, not on any rational distinction, but merely on the type of financing arrangement they chose." *Id.* at 894. Similarly, on defendant's reading here arbi-

trary distinctions would be drawn among condemnees because of the vagaries of local tax codes, over which they have significantly less control than they do over financing arrangements.

Section 4653 appears to invest agency heads with some degree of discretion in reimbursing condemnees for their expenses. But the court concludes that remand is not necessary in our situation because no question about the reasonableness of plaintiff's claim has been raised; only its allowability was challenged. *See Douglas,* 576 F.2d at 895. On the other hand, while plaintiff is entitled to reimbursement for the transfer tax, he is not entitled to interest incurred because he chose to contest the tax in state court which delayed payment, or court costs associated with that suit.

## Conclusion

Accordingly, it is ORDERED that plaintiff's motion for summary judgment is GRANTED and defendant's cross-motion for summary judgment is DENIED. Within ten days the parties will file a stipulation of the amount due and the Clerk will enter judgment in favor of plaintiff and against defendant without further order. Plaintiff will also have his costs.